UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| CRYSTAL M. TREADWELL, | ) |
|---|---|
| Plaintiff | ) |
| v. | ) Civil No. 1:09-cv-00534-JAW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) |
| Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Crystal M. Treadwell, 33 years old as of the date of alleged onset of disability (Sept. 30, 2006), has a severe impairment consisting of fibromyalgia, but retains the functional capacity to perform her past relevant work, resulting in denial of Treadwell's application for disability benefits under Title II and Title XVI of the Social Security Act. Treadwell commenced this civil action for judicial review of the final administrative decision, alleging errors at Steps 2 and 4 of the sequential evaluation process applicable to social security disability insurance and supplemental security income claims. I recommend that the Court affirm.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion of Plaintiff's Statement of Errors

The Commissioner's final decision is the May 28, 2009, decision of Administrative Law Judge Guy E. Fletcher (R. 9-22) because the Decision Review Board did not complete its review during the time allowed (R. 1).

The Judge found that Ms. Treadwell has insured status under Title II through September 30, 2010, and has not engaged in substantial gainful activity since September 30, 2006, the date of alleged onset of disability, thereby checking off Step 1 of the sequential evaluation process. (Findings 1 & 2, R. 11.)

The Judge found that several of Treadwell's alleged impairments are non-severe for purposes of Step 2, but that she has a severe case of fibromyalgia. (Finding 3, R. 11-2.) Treadwell says the Judge erred at Step 2 when he found that depression and anxiety, a back condition, and a hip condition were not severe impairments. (Statement of Errors at 1-4, Doc. No. 16.)

At Step 3, the Judge found that Treadwell's fibromyalgia would not meet or equal any listing within the Commissioner's Listing of Impairments. Treadwell does not make an argument in support of any listing.

At Step 4, the Judge made a residual functional capacity finding that Treadwell could engage in a subset of light work in which she would not have to sit more than six hours or stand more than six hours, subject to certain additional, nonexertional, postural restrictions. (Finding 5, R. 13.) From there, relying on vocational expert testimony, the Judge found that Treadwell's residual functional capacity was sufficient to enable her to perform her past work as a court clerk

and paralegal. (Finding 6, R. 21.) Treadwell argues that the Judge erred in regard to his residual functional capacity finding at Step 4 by failing to account for the additional step 2 impairments and by failing to evaluate the side effects of Treadwell's medication. She also argues that the finding is inconsistent with his finding, at Step 1, that her effort to work in 2007 as a paralegal was unsuccessful due to her impairment. (Statement of Errors at 6-10.)

The following discussion addresses the allegations of error at Steps 2 and 4.

**A.    Step 2**

At Step 2, the Commissioner must consider the severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe, medically determinable, physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairments must be expected to result in death or have lasted or be expected to last for a continuous period of at least 12 months. Id. §§ 404.1509, 416.909. To meet the severity requirement, the claimant must show that an impairment or combination of impairments amounts to more than a "slight abnormality" and has more than "a minimal effect on an individual's ability to work." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986); Social Security Ruling 85-28. This burden is a *de minimis* burden, designed to do no more than screen out groundless claims. Id. at 1123. Only medical evidence may be used to support a finding that an impairment or combination of impairments is severe. 20 C.F.R. §§ 404.1528(a), 416.928; Social Security Ruling 85-28.

Even if an error has been made at Step 2 by failing to find a particular impairment or combination of impairments to be severe, that error is harmless unless the plaintiff can demonstrate that inclusion of the impairment would have changed the outcome of the plaintiff's

3

claim at Step 3, 4, or 5 of the sequential evaluation process. Bolduc v. Astrue, No. 09-cv-220-B-W, 2009 U.S. Dist. Lexis 122049, *10 n.3, aff'd, 2010 U.S. Dist. Lexis 4005, 2010 WL 276280, *4 n.3 (D. Me. Jan. 19, 2010) (citing cases).

Treadwell argues that she has presented medical evidence of severe depression and anxiety. (Statement of Errors at 1-2.) She says that, subsequent to the psychiatric review technique of November 2007, her mental condition evolved alongside an exacerbation of her physical condition, so that a severe mental health issue is conclusively established or, at the very least, deserves another look by a consulting expert. (Id. at 3.) Treadwell also complains that her combined severe impairments include an evolving back disorder and hip disorder that, according to her, exist apart from her fibromyalgia syndrome. (Id. at 4-5.) The mental and the physical concerns are discussed in order.

    *1.*    *Depression and anxiety*

On November 7, 2007, Dr. David R. Houston, Ph.D., performed a psychiatric review technique for Disability Determination Services. Based on his review of Treadwell's medical records, he opined that Treadwell suffers from an affective disorder, but one that is "non-severe," as in a condition imposing only mild functional limitation, with no evidence of decompensation. (R. 313, 323, 325.) Dr. Houston's notes reflect that he assessed depression as arising from the pain and frustration of living with diffuse pain. (R. 325.) The data underlying Dr. Houston's psychiatric review technique are treatment notes from a Dr. Hayward, a physician at Corinth Family Medicine, including one note reporting Treadwell's tearfulness over diffuse pain in the lumbar region. (Id.; see also R. 237, 242-44.)

Treadwell's claims came up for hearing before the Administrative Law Judge on April 2, 2009, almost a year after Dr. Houston's application of the psychiatric review technique. In the

interim, Treadwell was referred for psychological evaluation by her case manager at Allies Inc. On January 8, 2009, Dr. David W. Booth, Ph.D., performed an evaluation. (R. 340.) Dr. Booth described an anxious and depressed affect, but full orientation and intact thought process. (Id.) Based on his interview with Treadwell, Dr. Booth assessed depression and anxiety arising not only from pain symptoms and lack of functioning, but also from economic stressors associated with a protracted period of unemployment and psychic pain associated with a poorly recollected childhood trauma. (R. 342-43.) He identified the following Axis I diagnoses: posttraumatic stress disorder (stemming from childhood), depressive disorder NOS, and panic disorder without agoraphobia. His Axis V global assessment of functioning score was 65. (R. 343.) Dr. Booth wrote Treadwell following the interview and recommended long-term psychotherapy. (R. 344.)

Treadwell relies on Booth's psychiatric evaluation for purposes of Step 2. She also references records created by Dr. Bentley (Ex. 10F) and Dr. Gratwick (Ex. 15F). (Statement of Errors at 3.) Exhibit 10F, dated January 17, 2008, has one salient page. It includes a note indicating a desire to talk to "MD about meds for depression," with another scribbling of "Prozac 10 mg." (R. 332.) There are initials following the notation about Prozac that, according to Treadwell, are those of a physician, Ellen Bentley, M.D. (Id.) Exhibit 15F includes the treatment notes of Dr. Geoffrey Gratwick, M.D., whose evaluations in 2008 and 2009 stem from a long-standing referral for assessment and management of fibromyalgia/diffuse pain syndrome. Included in his various "impressions" are a mention of depression/anxiety, two observations that Treadwell appeared "miserable," and a recommendation of Cymbalta for depression, to be taken in the morning, or at night if sedation results. (R. 353-354.) On October 21, 2008, Dr. Gratwick's impression was of moderate depression related to ongoing chronic pain syndrome. (R. 355.)

In his step 2 finding, the Administrative Law Judge concluded: "The affective and anxiety related disorders cause no more than mild restrictions in performing basic work tasks or activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace, and has caused no episode of decompensation of extended duration." (R. 12.) The Judge acknowledged that depression and anxiety are present as medically determinable impairments, but found that they do not qualify as severe under the "technique" prescribed by the Commissioner's regulations. (Id.) To be severe, there must be medical evidence of more than a mild degree of limitation in one of the three functional areas of (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, or pace, unless there is medical evidence of an episode of decompensation, or "the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Although the Judge found that depression and anxiety were not severe, he still discussed these impairments in terms of the three functional areas in his step 4 residual functional capacity finding. As a practical matter, the Judge decided that it was most appropriate to make his ultimate decision about depression and anxiety at Step 4.

The way the Commissioner's regulations are designed, if the Judge had found depression and anxiety to be severe at Step 2, it would entail a finding of at least a moderate impairment in one functional category and, therefore, he would be expected to incorporate an adaptive, social, or attention and concentration limitation at Step 4. It is for this reason that finding a mental impairment non-severe at Step 2 is understood to be harmless so long as the subsequent discussion of the three mental functional categories passes muster at Step 4. The following discussion of the Judge's step 4 findings will include a discussion of whether the services of a medical expert were required to assist in application of the technique on this record.

*2.    Back and hip conditions*

Chronic lower back pain and bilateral hip and leg pain have been a primary complaint of Treadwell's since well before her application for benefits. A radiology report of October 2003 offers a finding of lumbar scoliosis with convexity to the right and some mild narrowing and irregularity of the sacroiliac joints, raising the possibility of degenerative or inflammatory change of the sacroiliac joints. (R. 297.) A follow-up report of November 2003 finds normal intervertebral disks and no soft tissue or bony pathology at both L4-L5 and L5-S1. Axial imaging through the sacroiliac joints showed an increase in cortical thickening of the ilium on the right along the margin of the joint, but no evidence of erosive arthritis. The impression is "negative . . . apart from increased cortical thickness . . . on the right, probably indicative of early osteitis condensans ilii." (R. 292.) Follow up evaluation in 2005 by a consulting rheumatologist, Fadi Ajine, M.D., notes pain symptoms in both the lower back and the hips. (R. 229.) In April 2005, Dr. Ajine added bilateral trochanteric bursitis to his assessment, and expressed the opinion that osteitis condensans ilii was "stable." (R. 229.) In September, Dr. Ajine's partner, Dr. Gratwick, noted only mild trochanteric bursitis on the right side. (R. 227.) A third radiology report in September 2006 finds the SI joints' appearance "normal," but questions mild right sacroiliitis based on "very slight indistinctness of the mid to superior portions of the right SI joint as compared to the left." (R. 293.) A fourth radiology report in June 2007 confirms the slight spinal curvature, but also finds that "disk spaces are maintained," that the "SI joints look normal," and that there is no sign of spondylolysis or spondylolisthesis. (R. 294.) An MRI two weeks later demonstrated "minimal scoliosis at the thoracolumber junction. (R. 256.)

In August 2007, Treadwell saw Dr. Hayward, who supported the fibromyalgia assessment, based on a "completely normal" "bone scan." (R. 236; see also Final Report, Whole

7

Body Bone Scan, R. 255.) He expressed in his assessment that he did not think Treadwell capable of working at that time. (Id.) In September 2007, Treadwell reported to another care provider, Dr. Bentley, that she had lost her job because of being sick with pain. (R. 284.) That same month, Dr. Ajine noted: "x-ray of the lumbar spine as well as MRI and bone scan were non-revealing in 2007, which argues against the presence of any systemic rheumatic disease". (R. 301.)

Dr. Richard Chamberlin, M.D., performed a physical residual functional capacity assessment in November 2007, on behalf of Disability Determination Services. He identified fibromyalgia as the primary diagnosis and did not differentiate, for example, disk disease or osteitis condensans ilii as distinct diagnoses. (R. 305.) Rather, in his comments, he collected fibromyalgia, back problems, and arthritis under one heading. (R. 312.) Among the records he reviewed is Dr. Ajine's September 2005 note that added trochanteric bursitis as an additional condition. (Id.) Dr. Chamberlin assessed only exertional limitations, effectively calling for a restriction to light work with a cap of six hours on standing and a cap of six hours on sitting in an eight-hour workday. Certain postural restrictions were also indicated. All of these limitations were assessed based on the impact of chronic pain. (R. 306-07.)

More recent records relating to chronic pain symptoms consist of follow-up evaluation notes prepared by Dr. Gratwick. Dr. Gratwick first evaluated Treadwell for fibromyalgia syndrome in 2003, on referral. (R. 364.) The 2008 and 2009 records describe return visits to Dr. Gratwick for further evaluation of diffuse pain, allegedly worsening, and for trigger point injections. (R. 359.) In April 2008, Dr. Gratwick questioned whether the low back pain was related to fibromyalgia and sought to review images of Treadwell's sacroiliac joint. (Id.) In May 2008, he observed: "Her SI joints are really entirely normal." (R. 358.) He also noted regarding

lumbar pain: "negative MR, negative SI joints, negative bone scan. I think this is musculoligamentous." (Id.) Trigger point injections, sleep therapy, a physical exercise regimen, and non-narcotic pain medication were recommended to manage all of Treadwell's pain symptoms. (Id.)

In his decision, the Administrative Law Judge found that Treadwell suffers from a single severe impairment: fibromyalgia. (Finding 3, R. 11.) The Judge stated that back disorders and osteitis condensance ilii "do not cause more than a slight limitation in ability to perform basic work functions." (R. 12.) The Judge discussed Treadwell's pain allegations in his step 4 discussion. There, he also further explained his step 2 finding:

> The claimant has been diagnosed as having bilateral trochanteric bursitis. However, the last reports of record reveal that the disorder was improved and stable. No report contains any assessment or indication that she was significantly impaired by the disorder. Therefore it is found that the bursitis is not a severe impairment that causes more than slight limitation in her ability to do basic work tasks.
>
> The claimant has been diagnosed as having various lumbar spine disorders by various physicians. Although X-rays, MRIs, and CT scans have provided evidence at times of mild abnormalities, examinations have provide no consistent findings of impairment and only rare findings at that. Only rarely are difficulties noted in her movement. The mild findings on film and examination explain why she has not had a consistent diagnosis of her back complaints. Based on the mild nature of the findings and observations, it is found that she has no severe back disorder, including scoliosis and osteitis condensans ilii, that causes more than slight limitation in her ability to do basic work tasks.

Given the nature of this particular record, there is a substantial evidentiary basis for the Judge to assess the chronic pain symptoms collectively as part of a severe fibromyalgia condition, without separately finding a severe back disorder or a severe hip impairment. As for any back disorder, Dr. Chamberlin's physical residual functional capacity assessment provides a baseline expert opinion supporting the Judge's finding and Dr. Gratwick's more recent notes invite exactly that kind of finding. A reasonable mind might well accept these items of evidence as adequate to

9

support the finding. As for trochanteric bursitis in the hips, Dr. Gratwick indicated that trochanteric bursitis was improved in November 2008 and stable in February 2009. This is substantial evidence in support of the Judge's omission of bursitis as a distinct severe impairment. Notably, in the 2008-2009 timeframe, Dr. Gratwick's treatments recommendations were directed to fibromyalgia. (R. 352-54.) Dr. Gratwick's notes strongly suggest that Treadwell's significant physical impairment is fibromyalgia, a rheumatological condition that causes chronic pain.

As to both the back condition and hip condition, it is also worth noting that, because the fibromyalgia diagnosis requires an evaluation of the chronic pain experienced by Treadwell from her lower back to her toes, it gathers up all of her lower body pain symptoms for consideration at Step 4, even if the additional labels of osteitis condensans ilii and trochanteric bursitis fall off at Step 2. Functional pain is what Treadwell's case is about.

**B.  Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his or her residual functional capacity does not permit the performance of past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f). As a component of proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); "Clarification of Rules Involving Residual Functional Capacity Assessments," 68

Fed. Reg. 51,153, 51,157 (Aug. 26, 2003). This is both a burden of production and a burden of persuasion and it remains with the claimant through Step 4, where the claimant must demonstrate an inability to perform his or her past relevant work, if any. 68 Fed. Reg. 51,153, 51,155.

Treadwell argues that the Judge's finding at Step 4 is not supported by substantial evidence. Treadwell also argues that the Judge erred by failing to properly evaluate the side effects of her various prescribed medications. (Statement of Errors at 6-9, citing 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).) Treadwell also argues that the Judge made conflicting findings about her ability to perform her past work as a paralegal. (Id. at 10-11.) The discussion begins with the Administrative Law Judge's assessment concerning mental and physical pain and their impact on Treadwell's functional capacity, before considering the challenge to the thoroughness of the Judge's analysis concerning side effects of medication.

   *1. Mental RFC.*

The question is whether Treadwell has demonstrated that a more restrictive RFC finding is called for based on her additional evidence of mental impairment and back and hip disorders, assuming that they are severe impairments for step 2 purposes.

The mental health issue does not rise or fall on Dr. Houston's 2007 psychiatric review technique. The issue is whether subsequent medical records suggest a new state of affairs that necessitates another file review by a consulting psychologist. The trouble for Treadwell here is that evidence of long-term depression and anxiety, which undoubtedly exists in this record, does not, in itself, demonstrate a vocational deficit. The more recent records that Treadwell relies on as proof of severe depression or anxiety offer no opinion as to the occupational implications of her condition. Thus, the Judge did not misstate the record when he stated that Dr. Booth diagnosed depression and anxiety without noting any objective sign of impairment. (R. 18.)

11

Consequently, even if one assumes that anxiety and depression would have some bearing on Treadwell's ability to work, there is no expert opinion evidence subsequent to Dr. Houston's psychiatric review technique as to the degree of occupational impact that depression would have. In this context, there is no compelling evidentiary basis to conclude that the Judge erred in determining that mental impairment would not result in more than mild impairment in the three mental functioning categories. Concededly, it is likely that, had Dr. Houston performed another psychiatric review technique on the eve of the hearing, he would have identified an anxiety-related disorder in addition to an affective disorder, but there is nothing jumping out of the more recent medical records suggesting he could have found such a disorder severe for occupational purposes. On this record, Treadwell fails to carry her burden of proving a mental functional limitation that would further reduce her functional capacity beyond the exertional and postural limitations that arise from her pain symptoms.[1]

The fact that Treadwell complained of enhanced emotional pain and obtained a new diagnosis associated with childhood events does not mandate a re-referral for medical expert evaluation. Under the regulations, the first expert evaluation was performed because it was required at the initial stage of claim determination. 20 C.F.R. §§ 404.1520a(e)(1), 416.920a(e)(1). However, the regulations do not mandate re-referral in all cases when the diagnoses shift in the interim between initial claims determination and the hearing before an administrative law judge. The regulations state that the administrative law judge will document application of the technique in the decision. 20 C.F.R. §§ 404.1520a(e)(3), 416.920a(e)(3). The

---

[1] The Judge also flagged the fact that Dr. Booth scored Treadwell's global functioning at 65, considering that to be evidence of a mild condition at worst. (R. 18.) At oral argument, Treadwell's counsel argued that it was not fair for the Judge to base his finding partially on a GAF score because administrative law judges routinely minimize the significance of GAF scores even when they correspond to moderate or serious symptoms or impairment in functioning. A GAF score of 65 is not necessarily dispositive. However, the fact remains that Treadwell was referred to Dr. Booth by a case manager in relation to her disability claim. Despite this underlying objective, Dr. Booth nevertheless scored her at 65. This is part of the substantial evidence picture in support of the Judge's finding because it is evidence that a reasonable person might well rely on to support a finding.

judge properly documented his application of the technique. (R. 19-20.) As in other areas, the judge's application of the technique will be dispositive if it is supported by substantial evidence, so long as the judge properly applies the law, addresses the material evidence, and does not assume the role of medical expert. Nguyen, 172 F.3d at 35. Treadwell contends that the Judge assumed the role of medical expert. That is an overstatement on the record of this case. It does not require expertise in psychiatry to find that the mental health records, such as they are, are not adequate to prove a mental impairment that would cause greater than mild restrictions in occupational functioning. As the burden rests with Treadwell, reversal is not called for on the basis of these mental health records.[2]

### 2. *Chronic pain*

Treadwell alleges incapacitating physical pain associated with physical activity, including sitting. However, in her Statement of Errors Treadwell offers little in the way of explanation as to why substantial gainful activity in her prior calling is precluded. She states: "As previously discussed, because the ALJ failed to consider the diagnoses of depression, anxiety, trochanteric bursitis, and chronic low back pain, any associated limitations were not included in the RFC." (Statement of Errors at 10.) Mental impairments have already been discussed. As for additional lower body physical conditions, Treadwell does not describe what "associated limitations" she experiences that are not based on her overall experience of chronic pain from her hips to her toes as a consequence of a generalized "musculoligamentous" problem, in Dr. Gratwick's terminology. These symptoms were assessed in terms of residual functional capacity by a consulting expert in November 2007. The Judge's RFC assessment corresponds with the

---

[2] A March 18, 2009, review of systems by Treadwell's new primary care physician indicate a complaint of depression, but denial of "sense of great danger, anxiety, thoughts of suicide, mental problems, thoughts of violence, and frightening visions or sounds." (R. 375.) "Forgetfulness" is written, but there is no indication of any assessment by the care provider. Difficulty with concentration is denied under the neurological category. (Id.)

13

consulting expert's. The consulting expert's opinion is substantial evidence in support of the Judge's RFC finding and more recent evaluations made after the consulting expert's assessment are cumulative in nature.

Ultimately, in order to justify a more restrictive RFC finding than the one offered by Dr. Chamberlin, Treadwell must rely on her own report of symptoms, because the more recent treatment records do not speak in terms of residual functional capacity. Rather, they relate Treadwell's allegations of enhanced pain and her physicians' efforts to treat it. When it comes to judging the credibility of a claimant's subjective report of pain, an administrative law judge's discretion is considerable. "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The administrative law judge is assigned the task of making the credibility determination, 20 C.F.R. §§ 404.1529(a), (c)(1), (c)(4), 416.929(a), (c)(1), (c)(4), and in doing so he or she has leeway to consider what the "entire case record" reveals and what reasonable inferences it supports. Id.; see also SSR 96-7p, 1996 SSR LEXIS 4, *6, 1996 WL 374186, *2 (July 2, 1996) ("[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). The Court does not have authority to make a credibility finding *de novo* and, therefore, cannot overturn the finding just because it might draw different inferences from the record or harbors greater doubts about a claimant's functional capacity. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Treadwell's Statement of Errors does not address the Judge's credibility findings other than to say that he did not adequately discuss the side effects of medication.

*3. Side effects of medication*

The regulations provide a list of factors that frame the credibility analysis, including: daily activities; the location, duration, frequency, and intensity of pain symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of pain medication; other treatment; other measures to relieve pain; and any *ad hoc* factors that might deserve consideration. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). As this list reflects, the side effects of pain medication are but one factor among many. Here, the Judge made an unfavorable credibility finding based on an inference of exaggerated complaints in relation to rare observations of functional difficulty in any of the medical notes, and disinclination to try new medications or treatment despite allegedly incapacitating symptoms. (R. 20.) Although this was the crux of his credibility finding, the Judge did not ignore Treadwell's allegations of medication side effects (R. 14-15) and he offered some assessment of what the record indicated on that issue, including a finding that Treadwell had denied "any bad reaction" to "a medication" in 2006 (R. 15). The records that support this finding are a medical history form submitted to Dr. Ajine's and Dr. Gratwick's practice and signed by Treadwell in October 2006, when she was taking Percocet for pain, and a similar form completed earlier in the year when she was taking Tylenol 3 with Codeine. (R. 16; see also R. 226, 228, 230.) Thus, although there is an allegation that pain killers cause fatigue and make Treadwell feel dazed, there is also evidence that she did not consider the effects to be "bad reactions." There is evidence indicating that Flexeril bothers Treadwell, making her feel "foggy" in the morning, affecting her ability to concentrate (R. 199), and evidence that Flexeril was discontinued for a time (R. 229), but there is nothing in the record that would compel a finding that morning fogginess from Flexeril precludes substantial gainful activity throughout the day. There is also some evidence that concentration is not negatively

15

impacted. (R. 189.) The Judge did consider the issue and the evidence of side effects does not compel a credibility finding contrary to the one he made.[3]

   4. *Ability to perform past relevant work*

Treadwell contends that the Administrative Law Judge made inconsistent findings about her ability to work. The Judge found at Step 1 that Treadwell had not engaged in substantial gainful activity since September 30, 2006. In connection with that finding, he wrote:

> The claimant had an unsuccessful work attempt from April 2, 2007 to September 1, 2007 that ended due to her impairment. During that period she was unable to work the hours for which she was hired due to her impairment (Exhibits and 3E and testimony).

(Finding 2, R. 11.) Treadwell says this finding is inconsistent with the Judge's subsequent finding at Step 4 that she has the residual functional capacity to engage in her past work. (Statement of Errors at 10-11.) The evidence cited by the Judge in his second finding relates to Treadwell's subjective complaints. As such, the Judge's step 2 finding should not be treated as overriding his subsequent finding at Step 4 about the credibility of Treadwell's complaints and the degree to which her impairment restricts her functional capacity. At Step 2, the Judge need only determine whether Treadwell proved that she did not work, not whether she proved that she could not work. The nature of the step 2 finding cautions against using it as a trump at Step 4, where the Judge is free to discuss all evidence of record and must make a finding concerning the claimant's residual functional capacity. This is particularly appropriate as the step 2 finding consists of two brief sentences and the step 4 residual functional capacity is more than 7 pages. Although it is odd that the Judge worded his step 2 finding as he did, it is not cause to remand the

---

[3] The record in this case (*e.g.*, the medical history forms) distinguishes this case from the scenario described in the recommended decision in Zarrilli v. Astrue, Civ. No. 08-82-B-W, 2008 U.S. Dist. Lexis 93013, *21-22, 2008 WL 4936613, *7-8 (D. Me. Nov. 16, 2008), which Treadwell argues should be followed here. This case is more like the scenario described in the recommended decision in Vining v. Astrue, Civ. No. 09-269-P-H, 2010 U.S. Dist. Lexis 65939, *30-33 (D. Me. May 6, 2010) (not presently collected by Westlaw).

case. Clearly the Judge found that Treadwell's residual functional capacity permitted her to perform her past relevant work as a court clerk and paralegal. (Finding 6, R. 21.) Treadwell's remaining arguments hinge on points already addressed in relation to Step 2 and the residual functional capacity component of Step 4.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final administrative decision and enter judgment for the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 29, 2010